**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SmartTray International LLC, | No. CV-23-00831-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Astronics Advanced Electronics Systems Corporation, | |
| Defendant. | |

Before the Court is Defendant Astronics Advanced Electronics Systems Corporation's ("AES") partial motion to dismiss Plaintiff SmartTray International LLC's ("SmartTray") Third Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 25.) The motion is fully briefed (Docs. 32, 40), and the Court heard oral arguments on March 7, 2024 (Doc. 70). For the following reasons, the Court grants AES's motion.

**I.      Background**

SmartTray holds various patents for personal electronic device holders used in seats and tray tables in aviation and other forms of transportation. (Doc. 51 at ¶¶ 4-5.) On April 6, 2015, SmartTray and AES entered a License Agreement giving AES exclusive licensing rights to manufacture, advertise, sublicense, and sell products under those patents. (Doc 51-1 at 2.)

The License Agreement included an initial fee for exclusivity and provided for the payment of royalties, expressed both as an amount per product and as Minimum Royalties

required to retain exclusivity. (*Id.* at 3-5). If AES had not yet paid half the Minimum Royalty by June 30 of each year, it had the option to make up the difference and pay a "Half-Annual Catch-Up Amount" to retain exclusivity for the rest of the calendar year. (*Id.* at 4.) If AES "elect[ed]" not to pay the "catch-up" amount, the parties were to "use their best efforts to reach a compromise," or the license would revert to a non-exclusive license. (*Id.*) The same structure applied should payments not meet the Minimum Royalties by the end of the calendar year. (*Id.* at 4-5.)

AES paid the initial exclusivity fee and began advertising itself as the exclusive licensee of SmartTray's patents. (Doc. 51 at ¶¶ 28-34.) In 2016, it failed to meet the first half of the Minimum Royalty. (*Id.* at ¶ 90.) On November 17, 2016, the parties' representatives met to discuss the terms of the license going forward. (*Id.* at ¶ 45-54.) The meeting resulted in a list of terms written on a whiteboard, which SmartTray calls the "Whiteboard Agreement" or "The November Amendment." (*Id.*) Those terms included shifting the Minimum Royalties forward by one year and payments by AES of $65,000 per month throughout 2017 and a lump sum of $460,000 on January 1, 2018. (*Id.* at ¶ 49-52.) These terms were outlined in a slide deck but were never formalized in a document. (Doc. 51 at ¶¶ 45-54.) AES did not pay either amount but nonetheless continued to hold itself out as the exclusive licensee of SmartTray's products. (*Id.* at ¶¶ 79-89.)

In May 2017, SmartTray and AES met and formally amended the License Agreement in a document titled "Amendment No. 1." (*Id.* at ¶¶ 74-76; Doc. 26-1.) Amendment No. 1 states that "except as expressly amended below, all other terms of the License Agreement remain unchanged and in full force and effect." (Doc. 26-1.) The changes were limited to (1) a supplement to the Section 5 provision on sales-based royalties, and (2) an amendment to the requirements of Section 6, allowing AES to retain exclusivity through calendar year 2017 in exchange for a "pre-payment" of $260,000 to be made within five business days of execution. (*Id.*) AES paid the $260,000 prepayment but did not pay the Minimum Royalties in 2018, 2019, or 2020. (Doc. 51 at ¶¶ 76, 90.)

SmartTray brought this action in May 2023. (Doc. 1.) The Third Amended Complaint, filed December 1, 2023, alleges in pertinent part one count of breach of contract and one count of breach of the implied covenant of good faith and fair dealing predicated on AES's failure to make Minimum Royalty payments. (Doc. 51.) The Court now turns to AES' partial motion to dismiss.

## II.      Legal Standard

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a court considers only the contents of a complaint when ruling on a Rule 12(b)(6) motion to dismiss. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011). However, in certain circumstances, a court may also consider documents attached to the complaint as well as matters of judicial notice. *Id.* at 999.

## III.     Discussion

AES moves to dismiss SmartTray's claims to the extent they are premised upon the failure to pay Minimum Royalties, arguing that Minimum Royalties were optional on the face of the contract. (Doc. 25 at 9.) SmartTray argues that AES committed to paying

1    Minimum Royalties at the November 17 meeting and that under the original license, if AES

2    was the exclusive licensee of SmartTray's intellectual property between 2016 and 2020,

3    then it was required to pay Minimum Royalties for that period. (Doc. 32.) The Court will

4    address these arguments with respect to each claim.

5        **A.  Breach of Contract**

6        SmartTray alleges that AES breached the terms of the License Agreement by failing

7    to pay Minimum Royalties. (Doc. 51 ¶¶ 96-97.) To plead a breach of contract claim, a

8    plaintiff must allege the existence of a contract that imposed a duty, and that the defendant

9    breached that duty, causing damage to the plaintiff. *Nw. Indep. Forest Mfrs. v. Dep't of*

10   *Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). Under Washington law,[1] when

11   interpreting a contract, "[t]he intention of the parties must control; the intent must be

12   ascertained from reading the contract as a whole; and, where language used is

13   unambiguous, an ambiguity will not be read into the contract." *Felton v. Menan Starch*

14   *Co.*, 405 P.2d 585, 588 (Wash. 1965). A court "can neither disregard contract language

15   which the parties have employed nor revise the contract under a theory of construing it."

16   *Wagner v. Wagner*, 621 P.2d 1279, 1283 (Wash. 1980).

17       SmartTray alleges that three writings comprise the relevant contract: the License

18   Agreement, the terms discussed at the November 2016 meeting, and Amendment No. 1.

19   (Docs. 51-1, 26-1.) None of these three documents, however, supports SmartTray's claim

20   for breach of contract predicated on unpaid Minimum Royalties.

21       First, the License Agreement requires AES to pay royalties based on product sales

22   and separately establishes that continued exclusivity is conditioned on paying Minimum

23   Royalties. (Doc. 51-1 at 3-5.) By using the terms "option to pay" and "elects not to pay,"

24   the contract makes clear on its face that AES had the freedom to pay Minimum Royalties

25   and retain exclusivity, or to not pay Minimum Royalties and lose exclusivity. (*Id.* at 4-5.)

26   The result of failure to pay the Minimum Royalties is that the license reverts to a non-

27   exclusive license. (*Id.*) Thus, when AES failed to pay the Minimum Royalties, SmartTray

28    

---

[1] The License Agreement provides that it "shall be governed by and construed in accordance with the laws of the state of Washington[.]" (Doc. 51-1 at 11.)

was free to treat the patent license as non-exclusive, seeking other licensees and prohibiting AES from advertising itself as exclusive. SmartTray's decision not to exercise that option does not transform AES's option to pay Minimum Royalties to retain exclusivity into an obligation.

In arguing otherwise, SmartTray emphasizes that AES held itself out to the public as the exclusive licensee of SmartTray products even after it failed to pay the Minimum Royalties required to retain exclusivity. (Doc. 32 at 2.) As AES recognizes, these allegations might be relevant to the unjust enrichment claim in Count III of the Third Amended Complaint, a claim which AES has not sought to dismiss. (Doc. 51 at 15-16.) But the way AES held itself out to the public cannot modify the otherwise plain language of the License Agreement.

Next, SmartTray contends that the terms discussed at the November 17, 2016 meeting were an amendment to the License Agreement. (Doc. 51 at 7-8.) At oral argument, SmartTray argued that this alleged amendment reflected a promise that AES would pay the Minimum Royalties and retain exclusivity going forward. (Doc. 70 at 24-35.) However, SmartTray's claim that the terms written on the whiteboard during this meeting constituted a binding amendment to the License Agreement is implausible.

Instead, the meeting plausibly is understood as negotiations leading up to the later adoption of Amendment No. 1. Unlike the License Agreement and Amendment No. 1, the terms discussed on November 17 were never memorialized in any formal writing. Both parties are sophisticated business entities with the knowledge and capacity to formally create and amend agreements, and the lack of a formal amendment strongly indicates a lack of intent to be bound at that time.

Indeed, the parties formally amended the License Agreement in May 2017, and the text of Amendment No. 1 further shows that no amendment was made in November 2016. The title "Amendment No. 1" itself indicates that it was the first change to the License Agreement. Amendment No. 1 further states that "except as expressly amended below, all

other terms of the Agreement remain unchanged and in full force and effect." (Doc. 26-1 at 2.) There is no mention of any other amendment or agreement.

Which brings the Court to the final document that SmartTray alleges formed part of the relevant contract. The terms of Amendment No. 1 adjust Section 6 by granting AES exclusivity through 2017 in exchange for a pre-payment of $260,000. (Doc. 26-1 at 2.) SmartTray alleges that this was a prepayment toward the Minimum Royalties (Doc. 51 at ¶ 76), but this is unsupported by the text of Amendment No. 1. Besides providing that the "prepayment *may* be applied by [AES] against royalties that become payable under the terms of the Agreement in the future," (*Id.* (emphasis added)) there is no other mention of Minimum Royalties. Amendment No. 1 also explicitly left intact all other provisions of the License Agreement. (Doc. 26-1 at 2.) The terms of Amendment No. 1 cannot reasonably be read to render mandatory payments which were optional under the License Agreement.

What's more, even if the Court were to accept SmartTray's contention that the November meeting resulted in a binding amendment, the claim that AES breached its terms by failing to pay Minimum Royalties would fail. Under Washington law, a prior contract is superseded by a subsequent one between the same parties on the same issues whenever their terms are inconsistent. *PBTM LLC v. Football Northwest, LLC*, 511 F.Supp.3d 1158, 1173-1174 (W.D. Wash. 2021). Amendment No. 1's terms requiring payment of $260,000 in exchange for continued exclusivity through calendar year 2017 and preserving the remainder of Section 6 supersede any conflicting obligations resulting from the November meeting.

In sum, SmartTray's claim that AES was obligated to pay Minimum Royalties is facially implausible based upon the plain language of the contract. To the extent SmartTray's breach of contract claim is premised upon failure to pay Minimum Royalties, it is dismissed.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

SmartTray also alleges that by failing to pay Minimum Royalties, "AES deprived SmartTray of the benefit of the Contracts" in violation of the implied covenant of good

1  faith and fair dealing. (Doc. 51 at 14.) This claim is not supported by the facts as pled.

2  "There is in every contract an implied duty of good faith and fair dealing." *Badgett*

3  *v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991). The covenant attaches directly to

4  contract provisions and obligates the parties "to perform in good faith the obligations

5  imposed by their agreement." *Id.* "It is, of course, possible to breach the implied duty of

6  good faith even while fulfilling all of the terms of the written contract." *Rekhter v. State,*

7  *Dept. of Soc. & Health Services*, 323 P.3d 1036, 1041 (Wash. 2014) (quoting *Metavante*

8  *Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (7th Cir. 2010)). However, "the implied

9  covenant of good faith and fair dealing cannot add or contradict express contract terms and

10  does not impose a free-floating obligation of good faith on the parties." *Silvey v. Numerica*

11  *Credit Union*, 519 P.3d 920, 931 (Wash. Ct. App. 2022).

12  Here, no contract provision required AES to pay the Minimum Royalties, so mere

13  failure to do so does not deny SmartTray of the full benefit of performance of the contract.

14  At oral arguments, SmartTray argued that AES violated the covenant of good faith and fair

15  dealing because it misled SmartTray into believing that AES intended to eventually pay

16  the Minimum Royalties and maintain the exclusive relationship. (Doc. 70 at 37, 39-40.) In

17  other words, SmartTray argued that AES led it on, and as a result SmartTray did not pursue

18  other licensees as it otherwise would have had the right to do. However, the Third Amended

19  Complaint alleges only that AES deprived SmartTray of the benefit of the contract by

20  failing to pay all royalties due and owing. (Doc. 51 at ¶¶ 107-108.) SmartTray may not

21  amend its Third Amended Complaint by advancing a different theory at oral argument. As

22  pled, then, SmartTray's breach of the implied covenant of good faith and fair dealing claim

23  is dismissed insofar as it is predicated on AES's failure to pay Minimum Royalties. But

24  nothing in this order precludes SmartTray from moving for leave to amend its pleading if

25  SmartTray believes there are other allegations that can support a breach of the implied

26  covenant of good faith and fair dealing claim.

27  ///

28

1   **IT IS ORDERED** that AES's partial motion to dismiss (Doc. 25) is **GRANTED**

2   as explained herein.

3   Dated this 18th day of April, 2024.

Douglas L. Rayes
United States District Judge